IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL JARMAL PRUITT, | ) | CASE NO. 1:06 CV 3048 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| JULIUS C. WILSON, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

## Introduction

Before me by referral[1] is the *pro se* petition of Michael Jarmal Pruitt for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2]  Pruitt successfully expanded the record to include evidence related to his ground for relief based on alleged ineffective assistance of counsel.[3]  He has failed twice to obtain a stay of this petition during proceedings in state court on grounds not raised in this petition.[4]

In deciding this case, the Court must initially determine whether to recommend finding that Pruitt's second ground for relief, which raises an issue as to the use of a victim impact statement in his 2004 sentencing on a particular count,[5] is moot because Pruitt is now

---

[1] ECF # 6.

[2] ECF # 1.

[3] ECF # 19.

[4] ECF ## 8, 24.

[5] ECF # 1 (Attachment) at 11-13.

incarcerated[6] under a 2008 re-sentencing.[7] Further, if Pruitt's petition no longer contains this second ground for relief, I must decide whether to recommend that he is entitled to the writ on his single remaining claim of ineffective assistance of counsel.

For the reasons that follow, I recommend finding that (1) Pruitt's second claim for relief related to his 2004 sentencing is moot; and (2) Pruitt is not entitled to the writ on his remaining claim since the state appeals court decision denying this claim did not unreasonably apply clearly established federal law.

## Facts

### A.    Underlying offense, plea, and sentence

In 2004, Pruitt was indicted on four counts, including attempted murder and having a weapon while under disability, for shooting Darren Johnson in the face and abdomen[8] while Johnson was in Pruitt's apartment.[9] Essentially, Johnson, who survived the attack but was rendered legally blind,[10] contended at the sentencing hearing that he was at Pruitt's apartment attempting to confront Pruitt about a bad check when Pruitt shot him.[11] Pruitt, in his brief in

---

[6] As noted later, Pruitt was convicted and sentenced on multiple charges.

[7] *See*, ECF ## 24, 28.

[8] The record indicates that Pruitt fired four or five shots at Johnson but only hit him three or four times. *See*, ECF # 14 at 57-58.

[9] *See*, ECF # 14 at 8-11; 50-58.

[10] *Id.* at 51, 65.

[11] *Id.* at 50-58.

support of this petition, argues that, after returning home to find the door of his apartment ajar, he retrieved a gun from his bedroom to search for intruders and encountered Johnson, intoxicated, blocking the front door and making threats.[12] Pruitt maintains that when Johnson then made "furtive movements" toward his clothing during their argument, he believed Johnson may have been reaching for a weapon and so he shot him.[13]  He denies ever having given Johnson a check[14] and stated at the sentencing hearing that he just "blank[ed] out" at the time of the shooting.[15]

Pruitt and the State agreed upon a plea arrangement whereby Pruitt would plead guilty to two counts of the indictment – count one, attempted murder, with a firearm specification, and count four, having a weapon while under disability – in return for which the State would drop the remaining two counts of the indictment dealing with felonious assault.  After a hearing, the trial judge accepted the plea.[16]  He was sentenced in accord with that plea agreement  to a total of eleven years in prison.[17]

---

[12] ECF # 1, Attachment at 6-7.

[13] *Id.*

[14] *Id.*, at 7.

[15] ECF # 14, Attachment at 61-62.

[16] *Id*. at 12-43.

[17] *See*, *State v. Pruitt*, Nos. 86707, 86986, 2006 WL 2298783, at * 1 (Ohio App. 8 Dist., Aug. 10, 2006).  Pruitt was sentenced to three years imprisonment for the firearms specification of count one, such term to be served prior to and consecutive to an eight-year term for the attempted murder charge of count one, representing a period of 11 total years for count one.  In addition, a five-year term for the possession while under disability charge of count four was to be served concurrently with the previous term.

**B.     Motion to withdraw the plea**

Pruitt moved *pro se* to withdraw his guilty plea, alleging that failure to permit the withdrawal would be a manifest injustice.[18]  In his motion, Pruitt argued that he had received ineffective assistance from his trial counsel prior to accepting the plea in that his counsel had purportedly not properly investigated his case and so "made very little effort to develop a defense strategy," thus leaving Pruitt little choice but to accept the plea.[19]

Moreover, in his motion, which also sought an evidentiary hearing, Pruitt alleged that: (1) his court-appointed counsel was difficult to reach and did not communicate about his case; (2) his counsel solicited and received an additional $1,000 beyond his appointment fee from Pruitt's family in order to insure that Pruitt got better service from that attorney; and, (3) after receiving the money, his counsel assured Pruitt and his family that Pruitt would not receive more than three years in prison on all the charges if he pled guilty.[20]  Accompanying this motion were affidavits from Pruitt, his father, and step-father supporting the details of these allegations.[21]

The State filed a motion opposing Pruitt's motion to withdraw his plea, arguing first that Pruitt had not shown manifest injustice as required by Ohio statute and then that Pruitt's claim of ineffective counsel was barred from consideration by the doctrine of *res judicata*

---

[18] *Id.*, at *1.

[19] ECF # 14, Attachment at 87.

[20] *Id.*, at 89.  Pruitt argued that his defense counsel "guaranteed" Pruitt only a three-year sentence because "of the $1,000 payment he received."

[21] *Id.*, at 93-103.

in that it should have been asserted earlier.[22]  Pruitt responded[23] by contending that a manifest injustice was demonstrated and that *res judicata* was inapplicable.  Without conducting an evidentiary hearing, the trial court denied Pruitt's motion to withdraw his guilty plea.[24]

**C.     Appeals**

Pruitt, *pro se*, thereupon filed a timely notice of appeal from the trial court's decision denying him leave to withdraw his guilty plea.[25]  In his supporting brief, Pruitt raised a single assignment of error, arguing that the trial court abused its discretion in denying his motion to withdraw his guilty plea without an evidentiary hearing.[26]  The State filed a brief opposing the assignment of error raised by Pruitt.[27]

While this appeal from the trial court's denial of Pruitt's motion to withdraw his plea was still pending in the state appellate court, Pruitt sought and obtained permission to file a delayed direct appeal from his conviction and sentencing.[28]  In doing so, the state appellate

---

[22] *Id.*, at 104-06.  The State has acknowledged that only the first three pages of its brief in opposition are presently available and included in this record.  *See*, ECF # 14 at 5 n.2.  However, it is clear from Pruitt's responsive filing, as the State also maintains, that the State opposed Pruitt's motion to withdraw his plea on the grounds delineated here.  *See*, *e.g.*, ECF # 14, Attachment at 109-12.

[23] ECF # 14, Attachment at 107-13.

[24] *Id.*, at 115.

[25] *Id.*, at 116-22.

[26] *Id.*, at 123-43.

[27] *Id.*, at 155-66.

[28] *Id.*, at 183-201, 218.

court *sua sponte* consolidated this appeal with the pending appeal from the denial of Pruitt's motion to withdraw his guilty plea.[29]

Although each of  the consolidated appeals had, as filed, presented its own assignments of error, Pruitt, acting now through new counsel, filed a merit brief in the consolidated appeal, asserting as a single assignment of error that the trial court erred in sentencing Pruitt by relying on a victim impact statement.[30]  The State then responded, disputing Pruitt's argument.[31]

Pruitt, *pro se*, then obtained leave of the appeals court to supplement his brief with two additional assignments of error.[32]  In his supplemental brief, Pruitt restated his argument that the trial court had abused its discretion by denying him leave to withdraw his guilty plea without a hearing and added the argument that the trial court had abused its discretion in accepting a guilty plea to the charge of attempted murder when the "facts of the case did not contain the required elements of the charged offense."[33]

---

[29] *Id.*, at 218-20.

[30] *Id.*, at 224-37.

[31] *Id.*, at 256-64.

[32] *Id.*, at 238.  The sequence of the documents in this record appears to be out of order, in that Pruitt's counseled merit brief, although presented in the record after his *pro se* supplemental brief, was actually filed prior to the supplemental brief.

[33] *Id.*, at 239-55.

The State responded by filing a brief in opposition to Pruitt's two supplemental assignments of error,[34] to which Pruitt, *pro se*, filed a reply.[35]  In addition, Pruitt sought to file an errata sheet, purportedly claiming to correct typographical errors and amend the assignment of error propounded by counsel with a challenge to the constitutionality of an Ohio statute that, Pruitt claimed, counsel had "intended" to name in the original filing.[36]  That errata sheet was never considered by the Ohio appeals court because Pruitt had not previously obtained permission for its filing.[37]

The appellate court initially affirmed the trial court's decision to deny, without a hearing, Pruitt's motion to withdraw his plea.  The court found that Pruitt's contention that he was promised only a three-year prison sentence by his attorney was unpersuasive because "the transcript of the plea hearing makes clear that the trial court disabused [Pruitt] of any misunderstanding he may have had about the sentence he could receive before [he] entered his plea."[38]  Given that the plea colloquy disclosed that Pruitt plainly understood the sentencing range he was facing, had no questions for the trial court, and denied that any promises had been made to him in connection with the plea, the appeals court did not credit

---

[34] *Id.*, at 279-85.

[35] *Id.*, at 299-310. It is worth noting that Pruitt here, as in prior filings, lists himself, *pro se*, together with retained counsel, as counsel for appellant, although the declaration of service indicates that the brief was sent, and presumably prepared, by Pruitt.

[36] *Id.*, at 311-15.

[37] *See*, *Pruitt*, 2006 WL 2298783, at *3 n.1.

[38] *Id*., at *2.

Pruitt's contention that he had been induced to plead guilty by misinformation from counsel.[39]

In addition, the appellate opinion also found no merit in Pruitt's contention that he had been prejudiced by an inability to consult with his attorney.  In that regard, the court noted that Pruitt told the trial court at the plea colloquy that he had communicated everything important about his case to his attorney and that he had been pleased by his attorney's efforts on his behalf.[40]  Moreover, the appeals court concluded that Pruitt had not demonstrated that, but for any errors by counsel, he would not have entered the guilty plea.[41]

As to Pruitt's direct appeal challenge to his conviction for attempted murder, the court found that Pruitt could not demonstrate on the record that his attorney had advised him to enter a plea without conducting a sufficient investigation into the charges.[42]  Specifically, the court noted that it was limited in its review to the record before the trial court and that this record did not support Pruitt's allegation.[43]

---

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.*, at *3.

[43] *Id.*

Finally, the appeals court did remand Pruitt's case for re-sentencing on the single charge of having a weapon while under disability, since the trial court had imposed that sentence under provisions of Ohio law that had since been abrogated.[44]

Pruitt then timely filed, *pro se*, a notice of appeal with the Supreme Court of Ohio.[45] In his memorandum in support of jurisdiction,[46] Pruitt raised two propositions of law:

1.    When counsel fails to investigate and inform appellant of a plausible defense, prior to advising appellant to enter a guilty plea, appellant is denied the effective assistance of counsel as guaranteed by the Six[th] and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 16 of the Ohio Constitution.

2.    When appellant is sentenced in violation of the Sixth Amendment and the reviewing court fails to apply clearly established law, appellant is denied due process and equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.[47]

The State filed no responsive brief, and the Ohio Supreme Court denied Pruitt leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[48] There appears to have been no attempt to seek a writ of certiorari from the United States Supreme Court.[49]

---

[44] *Id.*, at *4.

[45] ECF # 14, Attachment at 330-32.

[46] *Id.*, at 333-48.

[47] *Id.*, at 334.

[48] *Id.*, at 355.

[49] *See*, ECF # 14 at 9.

**D.      Re-sentencing**

Under the limited remand from the appellate court, the state trial court re-sentenced Pruitt, now represented by new counsel, on his conviction for having a weapon under disability to the same sentence as had originally been imposed in 2004.[50]

Pruitt, *pro se*, then timely filed a notice of appeal from this sentence.[51]  In his brief in support of this appeal, Pruitt raised the following four assignments of error:

1.      The trial court erred to the prejudice of appellant in violation of the due process clause of the Fourteenth Amendment to the U.S. Constitution when on remand it exceeded the scope of its authority as mandated by the Eighth District Court of Appeals in *State v. Pruitt*, 2006 - Ohio - 4106.

2.      The retroactive application of the *Foster* severance remedy to appellant violates ex post facto doctrine and denied appellant due process of law in violation of the Fourteenth Amendment to the United States Constitution.

3.      The retroactive application of the *Foster* severance remedy to appellant violates the substantive component of the due process clause of the Fourteenth Amendment to the United States Constitution.

4.      Appellant was denied due process and equal protection of the law when the trial court failed to appoint counsel for appeal in violation of the Fourteenth Amendment to the United States Constitution.[52]

---

[50] ECF # 14, Attachment at 356.

[51] *Id.*, at 357-62.

[52] *Id.*, at 366-67.

The State filed a brief in opposition[53] to which Pruitt filed a reply.[54] The state appeals court found that Pruitt had not been informed by the trial judge at sentencing of the post-release control to be imposed after a prison term, and so remanded the matter for an additional re-sentencing.[55] Pruitt was re-sentenced to the same sentence he received in 2004 in accordance with the state appeals court's decision.[56] Pruitt's *pro se* appeal from this re-sentencing was dismissed *sua sponte* by the Ohio appellate court.[57]

## E.     Federal habeas petition

Pruitt filed the present petition for federal habeas relief alleging two grounds for relief:

1.     Petitioner was denied the effective assistance of counsel as guarantee[d] by the Six[th] and Fourteenth Amendments to the United States Constitution.

2.     When the sentence of a trial court violates the Sixth Amendment to the United States Constitution and the reviewing court fails to apply clearly established law, Petitioner is denied due process and equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution.[58]

---

[53] *Id.*, at 403-10.

[54] *Id.*, at 411-25.

[55] *See*, ECF # 26, Ex. A. (State appeals court decision of January 24, 2008 remanding case for re-sentencing.)

[56] *Id*., Ex. B. (Docket sheet).

[57] *Id.*

[58] ECF # 1, Attachment 2 at 8, 18.

With respect to ground one, Pruitt essentially restates his arguments, previously presented to the state courts, that his trial counsel was ineffective for not conducting a thorough investigation of his potential defense and failed to inform Pruitt of any "plausible defense" prior to Pruitt tendering his plea.[59]  Concerning ground two, he argues that the trial court violated his right to a jury trial when it considered the victim impact statement when sentencing Pruitt to the longest possible sentence for having a weapon while under disability.[60]

The State, in its return of the writ, maintains that the appeals court decision regarding alleged ineffectiveness of counsel was not contrary to, nor an unreasonable application of, the clearly established federal law of *Strickland*.[61]

First, the State contends that the plea hearing transcript demonstrates that Pruitt understood that, by entering the plea, he was waiving any defenses, including self-defense.[62] This defense, the State argues, rested on predicate facts that would have necessarily been known to Pruitt before entering the plea, regardless of any investigation done or not done by his attorney.[63]  Further, the plea hearing transcript shows that Pruitt pronounced himself

---

[59] *Id.*, at 10.

[60] *Id.*, at 18-26.

[61] ECF # 14 at 19-22, citing *Strickland v. Washington*, 466 U.S. 668 (1984).

[62] *Id*. at 22.

[63] *Id*.

satisfied with his attorney's performance.  Thus, the state appellate court's decision here in denying Pruitt's appeal was not "objectively unreasonable."[64]

Moreover, as to the second ground, the State contends that the trial judge's use of a victim impact statement at sentencing was not required by Ohio law, was not used to judicially find a fact, and was irrelevant, since Pruitt's sentence did not exceed the statutory maximum.[65]

As noted earlier, subsequent to the initial filing of the writ and the State's return, the parties have disputed several motions raised by Pruitt and have specifically responded to my Order for briefs as to whether, in light of Pruitt's re-sentencing earlier this year, his second ground for habeas relief is moot.  The matter is now ready for resolution.

## Analysis

**A.    Pruitt's second ground for relief – the purportedly improper use of a victim impact statement in his 2004 sentencing for having a weapon while under disability – should be found moot inasmuch as that sentence has been vacated and Pruitt was re-sentenced pursuant to a 2008 decision, which is not challenged in this petition.**

As noted earlier, the second ground for relief in the present petition contends that Pruitt's 2004 maximum sentence for the weapons offense was flawed because the trial judge, contrary to the Supreme Court's holding in *Blakely v. Washington*,[66] relied on facts from the victim's impact statement, not those found by a jury.  The state appellate court, in reviewing

---

[64] *Id.*

[65] *Id*. at 28.

[66] *Blakely v. Washington*, 542 U.S. 296 (2004).

-13-

this argument in 2006, essentially agreed with Pruitt and remanded his case for re-sentencing of the weapons conviction in light of Ohio's new sentencing protocol that does not require any judicial fact finding before imposing a sentence within the statutory guidelines.[67] Subsequent to the 2007 re-sentencing resulting from that remand, Pruitt won another re-sentencing on the same conviction in 2008.[68]

Accordingly, since Pruitt appeared to be incarcerated on the weapons conviction under the 2008 re-sentencing, not the 2004 sentencing complained of in the habeas petition,[69] I directed the parties to brief the question of whether Pruitt's second ground for relief is now moot.[70]

The State, citing the same series of events recounted above, concluded that:

(1)     Pruitt's original ground for relief only applied to his sentence for having a weapon while under disability since only that sentence, not the one for attempted murder, was the maximum allowed by statute and so potentially impacted by a *Blakely* violation;[71] and,

---

[67] *Pruitt*, 2006 WL 2298783, at *4.

[68] *See*, ECF # 26, Attachment 1 (*State v. Pruitt*, Cuyahoga App. No. 89405 (Jan. 24, 2008)).  Pruitt had argued that the trial court had not informed him at the 2006 re-sentencing that he would be subject to mandatory post-release control.  The appeals court concurred and remanded for re-sentencing.

[69] Pruitt filed his current habeas petition before the state appeals court awarded him a remand for re-sentencing in 2006 and before the 2007 re-sentencing required by that remand had taken place.

[70] ECF # 24.

[71] ECF # 26 at 3. "[T]he claimed *Blakely* error in the use of the victim impact statements in enhancing the basic potential term of punishment necessarily impacted only the sentence for the weapons disability offense where Pruitt was sentenced to the maximum term available."

-14-

(2)     both the 2004 and 2007 sentences have been vacated, making the only
        relevant sentence now in force the 2008 re-sentence, which has
        specifically not been challenged by this 2006 petition.[72] Consequently,
        the State argues that the second ground for relief of this petition should
        be dismissed as moot.[73]

Pruitt in response contends that this claim is not moot because:

(1)     even if re-sentencing corrected any *Blakely* problem with respect to his
        original sentence for having a weapon while under disability, the judge
        at the re-sentencing in effect made the same error that was challenged
        and upheld in the first appeal by adopting the unconstitutional fact
        finding of the original judge when he imposed the identical sentence
        without making any new findings;[74] and,

(2)     the sentencing scheme used in the re-sentencing still violates a
        defendant's right to have facts found by a jury when such facts are used
        to elevate sentences from the statutory minimum, to impose consecutive
        sentences or concurrent sentences.[75]

Pruitt also argues that these reasons implicate his sentence for attempted murder, as

well as that for having a weapon while under disability.  Specifically, he contends that he

raised in the errata sheet he filed in his state appeal identical *Blakely* violation claims

concerning the use of the victim impact statement during the attempted murder sentence, and

such claims were never addressed.[76]

---

[72] *Id.* at 3-4.

[73] *Id.* at 3.  *See*, *Bachman v. Bagley*, 487 F.3d 979, 980 (6th Cir. 2007)  "A federal
court has no authority to render a decision on moot questions or declare rules of law that
cannot affect the matter at issue."

[74] ECF # 28 at 7.

[75] *Id*. at 8.

[76] *Id*. at 4, 6.

I note first that Pruitt has not addressed the fundamental issue that the 2008 sentence for possessing a weapon while under disability, which now forms the legal basis for his incarceration on that conviction, is not the same sentence he challenged in his petition. Regardless of whether or not, as Pruitt argues, the 2008 sentence has similar infirmities to the 2004 sentence, the fact is that the 2004 sentence was the only sentence identified in the petition as defective, the sentence was later wholly vacated, and Pruitt never sought to amend his petition to allege error – similar or otherwise – in any subsequent re-sentencing.

Consequently, any claim based on any alleged error in the 2004 sentence for having a weapon while under disability is now moot, because that sentence is simply no longer the legal basis for Pruitt's incarceration.  Had Pruitt wished to argue that the re-sentencing in 2007 and 2008 shared similar errors to the original 2004 sentence, the appropriate course would have been to seek an amendment of his habeas complaint to make such a claim. Failing that, he cannot now bootstrap his arguments concerning the 2008 re-sentencing from his original ground for relief that specified only the 2004 sentence as constitutionally deficient.

Nor does Pruitt fare better with respect to his argument that his sentence for attempted murder is also defective by reason of a *Blakely* violation, a sentence that was not mooted by the 2008 re-sentencing since that re-sentencing was for solely the weapons conviction. Pruitt simply ignores the plain fact that his attempt to raise a *Blakely* violation claim for the

attempted murder sentence on state appeal – by an errata sheet[77] – was blocked by the state court, which found that Pruitt could not use such a means to, in essence, amend his appeal outside of Ohio's rules for amendment.[78]

Consequently, Pruitt never properly presented a *Blakely* violation claim concerning his attempted murder sentence in the state courts.  Thus, on these facts, there never was any *Blakely* error asserted or found in the attempted murder sentence that would have been left "uncorrected" by the 2007 re-sentencing solely on the weapons conviction.  In other words, no *Blakely* claim as to the attempted murder sentencing was properly presented that could now be alleged to have survived the mootness of the weapons conviction *Blakely* claim created by vacating that sentence and re-sentencing.[79]

Accordingly, I recommend finding that Pruitt's second present habeas claim alleging the improper use of a victim impact statement in his 2004 sentencing for having a weapon while under disability is now moot because that sentence has been vacated and Pruitt is now incarcerated on that conviction pursuant to re-sentencings in 2007 and 2008 that have not been challenged by this petition.

_____

[77] Pruitt admits in his brief, ECF # 28 at 3-4, that his appellate counsel only raised the issue of a *Blakely* violation with respect to the sentence imposed upon his conviction for having a weapon while under disability, and further admits that he attempted to use the errata sheet to "expand" his claim to include the sentence imposed for attempted murder.

[78] *See*, *Pruitt*,  2006 WL 2298783, at *3.

[79] A claim not properly presented for decision in one full round of the state's established review process in unexhausted but will be considered procedurally defaulted if no further state procedures to review the claim  remain.  *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999).  No procedures to review a challenge to the 2004 sentence for attempted murder are now available to Pruitt.

**B.      The state appeals court's decision to deny Pruitt's claim of ineffective assistance of counsel in light of clearly established federal law was not objectively unreasonable and thus ground two of the current petition should be denied.**

*1.      Standard of review/ineffective assistance of counsel*

To establish ineffective assistance of counsel as a basis for federal habeas relief, a petitioner must make two showings:  (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced petitioner's defense such that his trial was unfair and its result unreliable.[80]  Both showings must be made for relief to be granted, but the court need not conduct an analysis under both prongs if a petitioner fails to establish a basis for relief under one of the elements.[81]

As to the deficient performance inquiry, a reviewing court's scrutiny is highly deferential, in that "the court should recognize that counsel is presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[82]  As such, the reviewing court is not to indulge in hindsight, but to evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged error.[83]  In that regard, trial counsel's tactical decisions are

---

[80] *Strickland*, 466 U.S. at 687.

[81] *Id*. at 697.

[82] *Id*. at 689-90.

[83] *Id*. at 690.

-18-

particularly difficult to successfully attack, because a defendant's challenge to such decisions must overcome a presumption that the challenged action was sound trial strategy.[84]

In seeking to establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[85]  However, too constricted a focus on a "but for" analysis of the trial's outcome "may grant the defendant a windfall to which the law does not entitle him."[86]  Thus, properly understood, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's performance so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[87]

In the context of a guilty plea, while the performance prong of the *Strickland* test remains the same, to establish prejudice the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would have not pleaded guilty and would have insisted on going to trial."[88]

---

[84] *Darden v. Wainright*, 477 U.S. 168, 185-87 (1986).

[85] *Strickland,* 466 U.S. at 694.

[86] *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993).

[87] *Strickland*, 466 U.S. at 686.

[88] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

-19-

2.      *Standard of review/unreasonable application of clearly established federal law.*

28 U.S.C. § 2254(d)(1) states, in relevant part, that an application for federal habeas relief shall not be granted with respect to any claim that was adjudicated on the merits in state court, unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."

Under the "contrary to" clause, a federal habeas court may grant relief if the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently than the United States Supreme Court on materially indistinguishable facts."[89]

Under the "unreasonable application" clause, the federal habeas court may grant the writ if the state court identified the correct governing legal principle from the decisions of the United States Supreme Court but unreasonably applied that principle to the facts of the petitioner's case.[90] The proper inquiry here is whether the state court's decision was "objectively unreasonable," not merely erroneous or incorrect.[91]

3.      *Application of standards to state court's denial of Pruitt's claim*

In his Ohio appeal, Pruitt contended, as he does here, that he received ineffective assistance of trial counsel when counsel failed to adequately conduct any pretrial

---

[89] *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

[90] *Id.* at 407-08.

[91] *Id.* at 409-11.

investigation of Pruitt's purported grounds for self defense, thus being unable to advise Pruitt of any plausible defense before entering his plea.[92]  The state court rejected this argument, finding that it concerned advice counsel may have given Pruitt and so was "necessarily based on evidence outside the record of appellant's plea and sentencing," that is, evidence beyond the record available to the Ohio appellate court.[93]

Pruitt responds by maintaining that the state court's decision was incorrect in three ways:

(1)     the state court misstated the burden of proof required by *Strickland* for establishing deficient performance in that it analyzed Pruitt's claim strictly pursuant to a "but for" test;

(2)     the court was incorrect in confining its review to the record on direct appeal since Pruitt had presented his claim of ineffective assistance in both his motion to withdraw his guilty plea as well as in his direct appeal, and both matters were consolidated into a single appellate proceeding;

(3)     even if the Ohio court was correct in holding that it was required to limit its review to the appellate record before it, the evidence of counsel's failure to investigate potential defenses – and thus render ineffective assistance – was present in that record.[94]

The State, in response, notes that the transcript of the plea hearing establishes that Pruitt was aware that, in entering the plea, he was waiving any defense he may have chosen to present to the charges.[95]  Specifically, Pruitt would have "necessarily known" the predicate

---

[92] *See*, ECF # 1, Attachment at 9; *see also*, *Pruitt*, 2006 WL 2298783, at *3.

[93] *Pruitt*, 2006 WL 2298783, at *3.

[94] ECF # 1, Attachment at 10-11.

[95] ECF # 14 at 22.

facts to a self-defense argument at the time he entered the plea and so should be held to the waiver of that defense inherent in entering the plea.[96]  Morevoer, the State argues that the plea hearing transcript also shows that Pruitt professed himself satisfied with his counsel's efforts, telling the trial court that his "attorney had done everything [Pruitt] had asked him to do" in preparing for the plea.[97]

I note initially that the "facts" supporting a self-defense argument were stated by Pruitt to be as follows:  (1) Pruitt had come home to find the door to his apartment ajar; (2) fearing an intruder was present, Pruitt retrieved a .22 caliber revolver; (3) as Pruitt exited his bedroom, moving to the front door, he encountered the victim; (4) the victim and Pruitt began to argue, with the victim obstructing the only exit from the apartment; (5) the victim then simultaneously made verbal threats to Pruitt while making "furtive" movements into his clothing; (6) being in fear of an imminent attack, Pruitt shot the victim.[98]  Pruitt states that he provided these facts to the police in a statement.[99]

In addition to these facts that were originally provided to police by Pruitt himself, Pruitt states that a medical report on the victim provided to defense counsel revealed that the

---

[96] *Id.*

[97] *Id.*, quoting *Pruitt*, 2006 WL 2298783, at *2 (construing the state record of the plea hearing).  Facts found by the state appeals court in its review of the state trial record are presumed correct.  *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[98] ECF # 16 at 26-27.

[99] *Id.* at 27.

-22-

victim was legally intoxicated at the time of the shooting.[100]  Moreover, Pruitt and his counsel knew in August 2004 – well before the October entry of the guilty plea – that the victim alleged that he was in Pruitt's apartment to confront him over a bad check.[101]

It is important to note that all this information was known to Pruitt quite apart from any investigation by his counsel.  Pruitt, of course, knew what he had told the police, and also had learned well in advance of the plea that the medical report on the victim showed he was intoxicated and that the victim had provided a reason for being in Pruitt's apartment.  Thus, the only "fact" left unconfirmed by any failure of investigation on the part of defense counsel seems to be that counsel did not seek to review Pruitt's bank records to verify Pruitt's claim that he had never written a check to the victim, "bad or otherwise," and thus his stated reason for being in Pruitt's apartment had to be untrue.  And, most importantly, even this "fact" was known by Pruitt, since he obviously would know, regardless of any investigation by counsel, whether he had written any checks to the victim.

Accordingly, if Pruitt knew all these facts relevant to establishing self-defense, many of them by first-hand knowledge, irrespective of any investigation by his counsel, it is unclear how Pruitt could have been prejudiced by any purported lack of investigation.  In fact, as noted above, the test for establishing "prejudice" in the context of a guilty plea is

---

[100] *Id.*

[101] *Id.*

-23-

whether "there is a reasonable probability that, but for counsel's errors, [Pruitt] would not have pled guilty and would have insisted on going to trial."[102]

Merely pointing to areas that were not investigated by counsel, particularly where they involve facts already well-known to the defendant and known by the defendant to be supportive of a specific defense to the charges against him, does not create a basis for concluding that any failure to investigate *per se* necessarily played a role in causing the defendant to abandon a desire to go to trial and instead plead guilty.  As such, absent proof that any failure by counsel to investigate facts already known to both counsel and Pruitt actually resulted in any prejudice to Pruitt, as prejudice is defined for cases of guilty pleas, Pruitt cannot here establish any basis for relief on the ground of ineffective assistance of counsel.

I note further that, to the extent Pruitt's claim is not based on a failure of counsel to investigate and develop facts supportive of a defense at trial, but on an alleged failure of counsel to explain the risks and benefits of entering a plea or standing trial, Pruitt indeed

---

[102] *Hill*, 474 U.S. at 59.

must rely on facts outside of the appellate record.[103]  The state record contains no evidence

of what Pruitt's counsel may have advised him as to the risks and benefits of going to trial,

but does contain, as noted earlier, clear statements by Pruitt at the plea hearing solemnly

assuring the trial court that "he told his attorney everything he was aware of that was

important to the case, that the attorney had done everything that [Pruitt] had asked him to do,

and that the attorney had done a satisfactory job."[104]  In addition, as the state appeals court

pointedly noted, there "is no evidence [in the record] that, had further discussions occurred

[between Pruitt and his trial counsel], [Pruitt] would not have entered his guilty plea."[105]

In sum, I recommend finding that Pruitt has not shown that the Ohio appellate court

opinion denying his claim of ineffective assistance of counsel was an unreasonable

application of clearly established federal law.  Further, I also recommend that Pruitt's habeas

petition in this regard be denied.

---

[103] As noted, the state court reviewing Pruitt's claim of ineffective assistance of counsel in his consolidated direct appeal stated that it was unable to review evidence outside the record. *See*, *Pruitt*, 2006 WL 2298783, at *3.  Pruitt disputes that any evidence outside the record was required inasmuch as he had present these "claims of ineffective assistance of counsel in his motion to withdraw [his] guilty plea."  ECF # 16 at 23.  While presenting a "claim" is not the same as evidence, Pruitt is also incorrect if he is arguing that Ohio courts may consider matters outside the record on direct appeal.  "Ohio courts refrain from hearing claims on direct appeal that are based on facts outside the record.  Instead, Ohio has provided a procedure [by statute] whereby an appellant may present claims based on evidence outside the record in a petition for post-conviction relief."  *Gaston v. State of Ohio*, 27 F. App'x 301, 306 (6th Cir. 2001) (citations omitted).

[104] *Pruitt*, 2006 WL 2298783, at *2.

[105] *Id.*

-25-

## Conclusion

For the foregoing reasons, I, therefore, recommend that:

(1)    Pruitt's claim for habeas relief on the grounds of ineffective assistance of counsel be denied since he has not shown that the state appellate court opinion denying that claim was an unreasonable application of clearly established federal law, and

(2)    Pruitt's claim for habeas relief on the ground that the state trial court improperly utilized victim impact statements in Pruitt's 2004 sentencing on the weapons conviction be dismissed as moot.


Dated:  August 25, 2008                 s/ William H. Baughman, Jr.
                                        United States Magistrate Judge


## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[106]

---

[106] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-26-